UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
AT BROOKLYN

LOUIS J. VALENTE,

       Plaintiff,

vs.

NAPOLITANO & MAGNOTTI, et al.,

       Defendants.
_____/

Civil Action No.
01-CV-2923

HON. BERNARD A. FRIEDMAN

## OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is presently before the court on defendants' motion for summary judgment. Plaintiff has filed a response brief and defendants have filed a reply. The court shall decide the motion without oral argument.

This is a legal malpractice action. In March 1985 plaintiff Louis Valente was injured when he was struck by an automobile while walking alongside the building where he worked. Plaintiff promptly retained defendants Napolitano & Magnotti to represent him.[1] Approximately one year later, defendants filed a motion in state court for leave to assert a late claim against the owner of the building, New York City Industrial Development Agency (NYCIDA). That motion was granted, and in June 1986 defendants sued NYCIDA on plaintiff's behalf. However, defendants took no action to pursue this case and in approximately May 1988 it was "marked off the calendar" by

---

[1] Actually, plaintiff retained the law firm of Lemole McCarthy Magnotti & Napolitano. That firm was later dissolved, but defendant has stipulated that "[u]pon the dissolution of LMM&N, Napolitano & Magnotti assumed responsibility for the representation of Valente and the prosecution of the NYCIDA Action." *See* Joint Pre-Trial Order, Exhibit C ¶ 17.

the state court for lack of prosecution. Years later, in November 1996, defendants moved to reinstate the case on the court's calendar, but that motion was denied in August 1997. The denial of the motion was affirmed on appeal. *See Valente v. NYCIDA*, 675 N.Y.S.2d 310 (2nd Dept. 1998). In the instant action, plaintiff alleges that defendants committed legal malpractice by failing to prosecute the case against NYCIDA and permitting that claim to lapse.

Defendants acknowledge that they breached their duty to plaintiff by failing to prosecute the claim against NYCIDA and allowing it to lapse. *See* Joint Pre-Trial Order, Exhibit C ¶¶ 24-36. However, defendants argue that they are nonetheless entitled to summary judgment because plaintiff's claim against NYCIDA was doomed to fail, so defendants' forfeiture of the claim caused plaintiff no harm. Specifically, defendants argue that NYCIDA owed plaintiff no duty to provide him with a safe walkway because it was not the "genuine" owner of the premises. Further, defendants contend that even if such a duty existed, plaintiff could not prove breach or causation. Defendants conclude that plaintiff's claim against NYCIDA would have failed for these reasons even if they had not handled the case negligently, and plaintiff therefore cannot establish that his NYCIDA claim would have succeeded but for defendants' negligence.

In a negligence action, breach and causation generally are factual issues which must be decided by the trier of fact. In the present case, the jury will make this determination on two levels – first, whether NYCIDA breached a duty to plaintiff and whether that breach caused plaintiff's injury; and second, whether defendants breached a duty to plaintiff and whether that breach caused plaintiff to forfeit his claim against NYCIDA. While defendants concede that they breached their duty to represent plaintiff competently, the other issues are disputed and cannot be resolved on summary judgment. The primary dispute is whether NYCIDA breached a duty of care

2

by failing to provide pedestrians a safe means of entering and exiting the building and, if so, whether this breach proximately caused plaintiff's injury. Clearly, plaintiff has submitted evidence from which the jury could find in his favor on these issues. Plaintiff's expert, Alexander Litwornia, has indicated that "no bollards or sidewalk were provided to protect employees or visitors that were required to walk to the rear entrance. The failure to provide sidewalk and curbing or bollards directly contributed to this accident and the severity of this accident." *Litwornia Report* (dated 5-321-02), pp. 6-7. Defendants correctly note that the negligence of the driver, Anthony Russo, also played a significant role. Russo has admitted that he "was attempting to tune in a station on the my [sic] radio" when he struck plaintiff. *Russo Statement* (dated 5-16-85), p. 1. However, these facts do not establish that Russo's negligence was a "superseding cause," which extinguishes NYCIDA's liability. Plaintiff has presented evidence from which the jury reasonably could find that NYCIDA's negligence was a substantial cause of the accident, and this is all that is required to state a prima facie case. *See Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 315 (1980). The superseding cause doctrine comes into play only if "the intervening act is extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from the defendant's conduct," *id.*, and this is not the case here. Further, "[b]ecause questions concerning what is foreseeable and what is normal may be the subject of varying inferences, as is the question of negligence itself, these issues generally are for the fact finder to resolve." *Id.*

Defendants' other argument is that NYCIDA's "ownership interest in the subject property amounted to nothing more than financing." *Defendants' Memorandum*, p. 10. As defendants explain it, "plaintiff's employer, Merkent's Meants, conveyed to the NYCIDA title to the subject premises in or about 1982. The NYCIDA then leased the premises back to Merkent's Meats

3

via a lease agreement.... The NYCIDA in return issued Series 1982 Bonds, the proceeds of which were given to Merkent's Means for use in a construction and installation project. The purpose of the lease-back agreement was to 'discourage' Merkent's Means from removing its operations at its existing plant and facilities to a location outside the State." *Id.* pp. 10-11.

Defendants cite *Smith v. New York City Indus. Dev. Agency*, 696 N.Y.S.2d 239, 240 (2nd Dept. 1999), in which the appellate division dismissed plaintiff's negligence complaint against NYCIDA on the grounds that "NYCIDA's ownership interest of the premises was no more than a financing mechanism.... Accordingly, the NYCIDA cannot be held liable for the plaintiff's injuries by reason of its record ownership of the premises." Plaintiff counters by citing *Escobar v. New York City Indus. Dev. Agency*, 670 N.Y.S.2d 322 (2nd Dept. 1998), in which the appellate division affirmed the denial of NYCIDA's motion for summary judgment on the grounds that "[w]here, as here, the plaintiff has pleaded violations of specific provisions of the Administrative Code of the City of New York, the reservation in a lease of a general right to enter and inspect the premises may subject an out-of-possession property owner to liability." Apparently there is no other case authority as to whether NYCIDA owes a duty to protect those coming onto premises it owns.

The court believe the facts in *Smith* distinguish it from the present case. In *Smith*, the lessee went bankrupt two years before plaintiff was injured. The bankruptcy trustee and a bank to which NYCIDA had assigned its interest in the lease "entered into a stipulation pursuant to which [the bank] assumed responsibility for payment of all expenses of preserving the premises." *Id.* The appellate division understood this stipulation to confer upon the bank "the obligation to maintain the premises." *Id.* There is no such stipulation in the present case.

As plaintiff notes, the lease in the present case gave NYCIDA, the titleholder of

4

record, the right "at all reasonable times to enter upon, examine and inspect the Project." *Lease Agreement* ¶ 9.11. The lease also required the lessee's machinery and equipment to carry a label stating "Property of New York City Industrial Development Agency" (*id.* ¶ 2.4), and the lease gave title of all machinery acquired by the lessee to NYCIDA (*id.* ¶ 4.2). *Escobar* specifically addressed the issue not touched upon by *Smith*, namely, the retention by NYCIDA of the right to enter upon and inspect the premises can give rise to liability in the event injury is attributable to a violation of a specific provision of the New York City Administrative Code. Even if, as defendants contend, the leases in *Smith* and the present case contained a similar clause on this subject, the fact remains that the court in *Smith* did not discuss its significance. The court in *Escobar* did address this specific issue and concluded that the reservation of this right, coupled with an alleged city code violation, "may subject an out-of-possession property owner to liability." *Escobar*, 670 N.Y.S.2d at 322. *See also Tkach v. Montefiore Hosp.*, 289 N.Y. 387 (1943) (out-of-possession owner liable for injuries caused by defects in the premises if he retained the right to enter and inspect). This conclusion is strengthened in the present case by the leave provisions giving NYCIDA control over the lessee's operations and title to its equipment.

The court is also satisfied that plaintiff has sufficiently alleged the violation of specific provisions of the New York City Administrative Code, as required by *Escobar*. Plaintiff has identified §§ C26-80.0, 27-127 and 27-128. The first of these requires the removal or repair of "[a]ny structure or part of a structure or premises that from any cause may at any time become dangerous or unsafe, structurally or as a fire hazard, or dangerous or detrimental to human life." The second (formerly § C26-105.1) requires, among other things, that a building's "means of egress ... shall be maintained in good working order." The third (formerly § C26-105.2) states that "[t]he

owner shall be responsible at all times for the safe maintenance of the building and its facilities." These code provisions, together with the retention of the right to enter and inspect the premises, suffice under *Escobar* to defeat defendants' argument that NYCIDA cannot be held liable.

For these reasons,

IT IS ORDERED that defendants' motion for summary judgment is denied.

IT IS FURTHER ORDERED that the court shall decide defendants' motions in limine on the morning of trial, in the event no settlement is reached.

IT IS FURTHER ORDERED that the settlement conference shall commence at 11:00 a.m. (not 9:00 a.m., as indicated in the court's October 21, 2004, order). Plaintiff and a representative of defendants' insurance carrier with full settlement authority must be present. In the event no settlement is reached, jury selection will commence immediately thereafter.

s/ Bernard A. Friedman

Dated: APR 12 2005
Detroit, Michigan

BERNARD A. FRIEDMAN
CHIEF UNITED STATES DISTRICT JUDGE
SITTING BY SPECIAL DESIGNATION